United States Court of Appeals
Eighth Circuit

Allan C. Mugan,
Appellant,

V,                                          RE: 10-1808

United States of America,
Appellee.

Petition For Rehearing
and Rehearing En Banc
F.R. App. P. 40

Comes Now Allan C. Mugan (movant) unrepresented/pro-se to

petition the Honorable Eighth Circuit for Rehearing by the panel and Rehearing

En Banc of the cause of action captioned above.

In support of this petition, Movant states as follows:

Nature of Proceedings

On August 27, 2007 Movant filed a petition for a writ of



Habeas Corpus pursuant 28 U.S.C. ss 2255 in the Northern District of Iowa, United States District Court.

After response by the government and traverse by Movant, the action was denied by the district court on March 29, 2010.

Movant filed for articulation because the District Court failed to make any findings of fact or conclusions of law. The motion was denied.

Movant then applied to this circuit for a certificate of appealability, claiming all the issues set forth in his 2255 as grounds for relief, as well as the failure of the district court to make any findings of fact or conclusions of law. The COA was denied without opinion on October 1, 2010.

Movant avers that either he was not specific enough to alert this panel the errors of the District Court or that this court has overlooked or misapprehended the intent of movant. Movant feels he is compelled to submit the facts, put forward the evidence and exhibit the case-law in a more approachable manner so this panel has a clear comprehension as to how his

③↝⑦

constitutional rights have been violated. Also that which will allow the Eighth

Circuit to grant the requested COA.

It appears that the district court made the following determination:

Pages 1 & 2 of the march 29, 2010 order states that an evidentiary hearing is at the

discretion of the district court and she must determine whether my alleged facts, if true,

would entitle me to relief. Also that, if she accepted them as true and they still wouldn't

entitle me to relief, that therefore an evidentiary hearing is unnecessary. Hearing is also

unnecessary where allegations, accepted as true, contradict the record, are inherently incredible,

are conclusions or lack factual evidence. The district court continues with — stated

differently, my 2255 can be dismissed, without hearing, where the files and records

"conclusively" show I'm entitled to no relief. She concludes she can resolve my claims from

the record (but totally ignoring all the new evidence I submitted). Then she states the record

"conclusively shows" my ineffective assistance of counsel claims to be meritless.

Regarding any merit, she deters her opinion as agreeing with all the reasons

set forth in the government's resistance.

③

In the government's resistance the district court states it was determined *that* all of my claims *were* procedurally defaulted. Hence, the impasse.

Because my only alternative *of that issue,* to my previous filings is specifically attacking the district court's assessment *that* I was given effective assistance of counsel *(IAC).* My claims are not conclusory (evidence has been provided).

"Conclusively" means irrefutable, unquestionable. Movant proclaims his claims of ineffective assistance of counsel were demonstrated with factual evidence, *most of which* ~~some~~ never viewed by the court before. Therefore the district court's determining my claims baseless is indeed questionable given these facts.

The 8th circuit holds, "Issues regarding ineffectiveness of counsel often require a hearing" to consider evidence not disclosed "on the face of the trial record." ~~See~~ Remand is necessary where the record is inconclusive on a claim for IAC. Absent clarity, an evidentiary hearing is required. *See* ~~Nelson~~ v. United States, 2008 U.S. App. Lexis XXXX CAR.

Because court appointed counsel was also ineffective for failing

(6)

to develop the record for the district court, then on appeal, Movant's IAC claim, he has the right under due process to raise the issue in his 2255 and also to an evidentiary hearing so the vast amount of evidence securing the claim can be properly presented for the court's reasonable application of the law.

The district court's only apparent justification in denying my IAC claims would appear to be that my allegations (true or not) are contravened by the existing record. Notably, however, there is no identification of those portions of the record which allegedly would contravene the allegations of IAC set out in my 2255. The other reason for denial is because the court agreed 100% with the government in its resistance motion authored by an intern student.

The Northern District of Iowa has stated, that in an examination for IAC, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. Ex/Ex

Movant provides the totality of counsel's ineffectiveness to



ensure "all" the circumstances are presented and all of his/hers ~~actions~~ acts

and/or omissions which were outside the range of professional effective counsel,

whereby the outcome of certain proceedings and confidence in the constitutional

conviction have been undermined.

Sixth Amendment Standards of Review

1. Standards adopted by the Supreme Court -- Strickland and Cronic

Standard for Ineffective Assistance of Counsel.



_Strickland v. Wasington_, 466 U.S. 668, 80 L.ed.2d 674 (1984) p. 2063: The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that "the right to counsel is the right to the effective assistance of counsel." _McMann v. Richardson_, 397 U.S. 759, 771, n.14 (1970).

My claim that both retained and court-appointed counsel's assistance was so deficient/defective as to require reversal of sentencing & conviction has two components. [Two part test]. First, I understand the court needs me to show counsel's performance was deficient. A requirement of a showing that counsel made errors so serious that he/she was not functioning as the "counsel" guaranteed me by the Sixth Amendment. Second, I need to show that the deficient performance prejudiced my defense. Which requires showing the confidence in the outcome has been shaken or is not reliable.

_Presumed Standard For Prejudice._

(40) (18) (9)

U.S. v. Cronic, 80 L.ed 2d 657 (1984)

It is important to note the Supreme Court pointed out specifically that defendant was appointed an attorney with a real estate practice who had little time to investigate while the government (and its vast resources) had over 4 years.

page 2047: The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Footnote 25. "The Court has uniformly found constitutional error without any showing of prejudice when counsel was totally absent, or prevented from assisting the accused during a critical stage of the proceedings."

Before it became known the instant charges, had become of federal interest, I retained counsel McGuire to protect my family from the clutches of DHS (Department of Human Services). McGuire was my worker's comp. attorney's law partner, which created an automatic conflict of interest, unbeknownst to me.

My family's house was searched when, out of vengeance, my son + niece conspired to fabricate a fiction of child abuse. Police save false



Facts, Evidence and Exhibits

Retained counsel Mr. McGuire was ineffective at the following critical stages:

Counsel McGuire lured me into retaining him under false pretenses. His law partner

was representing me in a worker's comp action. At the time McGuire was retained,

his partner was at $122,000.00 in settlement negotiations. This became,

unbeknownst to me, an immediate conflict of interest as McGuire only took the

case so he could tax against the proceeds of the settlement.

Proof of this lies in the fact that McGuire has never been an adversary in

a federal criminal complaint. He had no knowledge of federal rules of procedure,

federal rules of evidence, United States Sentencing Guidelines or appellate procedure.

I proved these things to the district court by way of McGuire's billing

statement, his filing a ninth circuit case, claiming a dismissal was appropriate

based on that circuit's findings, his filing an appeal to the Eighth Circuit

without a final judgment. I proved by way of McGuire's first motion to withdraw

because of money and how he stole over $5,000 from the settlement trust

account AFTER I voided the power of attorney and rescinded the attorney-client



relationship. I proved McGuire's law firm doctored a letter to the work comp

attorney to make it appear McGuire knew I had settled the work comp claim

for only $60,000.00 before agreeing to represent me. McGuire had a professional

responsability to know federal law before agreing to representation.

McGuire had a duty to investigate the search warrant and its probable cause

and legality. By way of McGuire's billing statement I proved he never questioned

the illegal search + seizure nor the police, witnesses complainants or any aspect

of the police officer's inadequate investigation.

By way of the search warrants, documents, its affidavits, the falsehoods therein, and the

lack of probable cause therein, and no particularity therein, I showed the court it

was unreasonable for McGuire to not investigate the Fourth Amendment issues. It

was unreasonable and a part of no strategy to not request the a suppression

hearing. —

McGuire had a duty to investigate the government's so-called evidence in this

matter. By way of McGuire's billing statement I proved he never investigated



the alleged evidence. He never questioned any chain of custody, origination,

possibilities of alteration/contamination, or how the police created their "digital evidence".

He never questioned police, the postal inspector nor the government any aspects of

the alleged evidence. I proved by way of the illegal search the alleged

evidence was inadmissable. I proved by police documents and statements

that there was no chain of custody and that police procedure contaminated

any alleged evidence and that digital photos are very very easily altered.

I proved the postal inspector had no idea where the images came from.

Because of the numerous ways the alleged evidence should have been found to be

inadmissable there is no reasonable strategy that would allow

counsel to opt to forgo any investigation into that evidence.

McGuire had a duty to investigate federal entities involvement in the state

of Iowa investigation. Again, by way of McGuire's billing statement I proved

McGuire never once questioned the federal government or the postal

employee. I proved that the postal inspector had no authority to investigate



alleged state of Iowa criminal conduct which was merely alleged to have occurred solely within a private residence. Counsel was totally unreasonable in not looking into whether a federal entity acted appropriately in this matter and could this not be a part of any trial strategy.

I proved by way of McGuire's billing statement that he conducted no investigation whatsoever. The billing statement shows how counsel spent all of his time in his representation during this matter. Attached is a copy of that that billing statement, I provided to the District Court. Counsel shows billing for virtually every minute he utilized his efforts in his "adversarial" position in this representation. Please examine this document now. Notice there are very with many "conferences" "telephone conferences". Those phone calls were to either myself, or about the settlement. the government, the postal inspector or an agent within the party. The statement shows also he spent time travelling, he reviewed some photos, the grand jury testimony and researched the motion to dismiss the indictment, based on the ninth circuit case "the govt. provided" him. The statement also shows every expenditure



accumulated in regards to the representation.

Not present in Counsel's billing statement is the investigations he should have performed mentioned above. Also missing is any investigation of any witnesses. It is not reasonable and certainly part of no professional strategy to question absolutely nobody. My daughter "called him" to tell him her dad is not like what he's been accused of. My brother "called him" to ask ~~of consequence of~~ about prison time. guilt.

Not present in the statement is an investigation into the charges presented in the indictment, the time frame or the elements of ~~men or us~~ behavior/ conduct which was encompassed in the indictment. It is not reasonable to not investigate the indictment/charges to ascertain what needed to be proven or how to defend against the accusations.

A part of the record shows McGuire was totally absent from the arraignment on April 18, 2010 although he was retained by me on April 10, 2010. I was made to appear at the hearing with a~~n~~ federal public defender. The record states I "will be" retaining counsel McGuire, which was a falsehood. Even though the error may be



construed as harmless as I was indeed represented, it still proves my retained

counsel was absent and I was forced to proceed at a critical stage of the

proceedings without the counsel of my choice, (retained counsel McGuire). Which

also proves my retained counsel was ineffective for failing to represent me during a

critical stage.

  A part of the record, detention hearing transcripts, shows retained counsel

did appear for representation at the detention hearing. Said transcripts show McGuire

was ill-prepared for the proceeding and had no clue of allowable hearsay testimony

or evidence. Because of McGuire's ineffectiveness I was ordered detained, for the

most part, because the government presented evidence of a past conviction in the state of

Iowa which never existed. I proved the government's misconduct by presenting the

real conviction orders of an Iowa magistrate. I was jailed and which not only presented

a liberty interest but seriously hindered my ability to prepare and assist in my defense.

(My counsel was over 150 miles away)

  Not part of the record is the government's rush to conviction by

way of a government sponsored/authored plea agreement on May 1, 2003 some two



weeks after the arraignment. The government demanded the agreement be accepted (in full) by noon May 9, 2010. This wasn't a negotiable contract, merely a notice of demand. McGuire was unaware of the plea agreement as he was on vacation the last week of April through the first week of May. While McGuire was on vacation and during the time the government's demand was in limbo, McGuire stopped in Des Moines to view the government's only evidence (the images produced & created by Hampton police & faxed to the postal inspector). McGuire then reviewed the grand jury transcripts where he developed a viable defense strategy on May 8, 2010. Meanwhile, I possess this document inside a county jail which states it needs to be accepted by May 9, 2010 and I am absolutely lost as to its meaning. ~~we~~ ~~It I should fight and have the good time~~ ~~park there~~. I was totally without an adversary. The due date, May 9th, Counsel McGuire shows up at the county jail, after viewing the only evidence and reviewing the grand jury testimony, and tells me we won't accept the plea agreement because my wife's identification of a picture was not 100% and he found a case in California that had been dismissed. He assured me my troubles were nearly over & I'd go home soon. I took him at his



World as I was paying him for what I thought was his "knowledgeable" assistance.

According to McGuire's billing statement, and the docket sheet and any added discovery provided by the government, nothing informative developed between his visit May 9th and May 21, 2010 (the time the government demanded a 2nd plea agreement be signed. However, there was a phone call between McGuire and the government on May 20, 2010 wherein the Asst. U.S. Attorney told McGuire he was proposed resending the plea agreement offered before and if it was refused he would add an obstruction of justice charge. (a charge he couldn't prove).

McGuire filed his frivolous motion to dismiss the indictment on May 15, 2010.

It was ineffective and unreasonable for counsel to decide for himself (the day the 1st plea agreement was due) without discussing its terms, the advantages of pleading vs. going to trial (or any aspect of the offer) with me. Counsel never once explained any part of the agreement. He was so sure of himself getting the indictment dismissed he never discussed any consequences or advantages.



Had I been told the government could possibly win their case I may

have took it upon myself to learn of the paragraphs in the plea agreement. I

may have accepted the deal wherein I was offered a 3 point reduction for

acceptance and no upward departure for obstruction. At the time of the first

offer the resulting mandatory guideline sentence was under 10 years. But the statute

carried a mandatory minimum of ten years. Because of the variance from the

guideline range and the mandatory minimum the court may have very well sentenced

me to the ten years. Any enhancements would have been overturned in light of

Blakely. Therefore, I was prejudiced because McGuire's

representation cost me 20 years unconstitutional imprisonment.

Not in the record, anywhere, is there a reasonable foundation

specifying any matters which may have changed McGuire's strategy of his

viable defense theory or motion to dismiss, between May 9th and May 21, 2010.

( The dates the first plea agreement became void and the date the 2nd agreement

was faxed to McGuire, respectively ). The obstruction threat was of May 29



was not a qualified reason to abandon the mistake of identity defense.

McGuire came to Cedar Rapids to read some letters the government illegally seized from the U.S. mail stream, in violation of Fourth Amendment rights. The same day McGuire merely "dropped off" a copy of the plea agreement to the county jail and went home (180 miles away). This was May 23, 2003 and I did not know why he dropped it off. I didn't know if I was now to plead guilty or what the deal was. I only knew that I wouldn't allow my wife to be drawn into the ordeal. I thought the indictment was due to be dismissed or I'd win at trial, no harm done to anyone.

Out of the pure blue sky, counsel coerces me into the plea by telling me my wife & kids would be brought to court and the government would ask for 1-4 more years for obstruction if I didn't agree. Not understanding the agreement, I drafted my own. The 23rd was the start of the memorial day weekend. It was due to be turned in to the court by the next wednesday (4 days away). That left only Tuesday to discuss the offer of



the government. As per McGuire's billing the plea agreement is only mentioned being looked at by McGuire (inexperienced in federal matters) the day it was due by noon. Not being able to talk to my "adversary", he merely faxed the plea agreement to the jail. He made me sign it against my will and had a courier pick it up to deliver to the govt. some 4 hrs late.

(Indent) → ~~dblespace~~ next 7 lines
Note! I understand this is lengthy for the reader and may seem I'm arguing the points as if on trial. However, this presentation is necessary so the fact finders will see the constitutional violations of my rights to due process and ineffective assistance of counsel as well as the Fourth Amendment violations, the District Court and/or panel has overlooked due to my lack of understanding on how to prepare an adequate informative brief. The attached exhibits (caselaws) support my averments. Please read on. My life and justice are at hand. I did not commit this crime and there isn't now, never has been, nor ever will be, any proof stating I did. I've spent almost 8 years in confinement trying to put forth the truth.

(22)

Because McGuire's law partner failed to disburse my settlement proceeds, in the manner I dictated, I rescinded the attorney client relationship as well as any power of attorney. I instructed the law firm to then mail the entire amount, held in trust, to me at my home address, which the firm also refused to do. see McGuire's motion to withdraw June 4, 2003.

According to the record (docket sheet) McGuire's motion to withdraw was then set for 12:00, June 9, 2003. ~~That before that hearing~~ I presented a motion of my own asking the court to force McGuire to continue his representation for the agreed upon price of $10,000.00.

Just before the hearing McGuire told me that the money situation was cleared up and he was appointed to be my counselor at public expense per the csa. (which was a lie, a ploy so I'd plead guilty). He stated the government wanted to enter the plea verbally (parties we were all here"). Despite my declining to do so, McGuire vehemently commanded me to do so or do 20 years in prison.

I was never instructed by counsel McGuire as to the terms of the



plea agreement, I was told to just watch him during questioning. McGuire's

acts and inaction during the hearing spoke volumes of his ignorance and lack of

knowledge as to what was occurring. The judge never performed any hearing to

find out the reasons for the withdrawal motion or assure itself the conflict

had indeed been resolved.

    I proved by way of the government's memorandum of June 9 that his

deceipt obvious as it was pre-prepared and had a court scheduling included listing

June 9, 2003 1:00 for the hearing. No such hearing is on the docket (record).

    As I was testifying, as instructed, I had to consult with McGuire

when talk of an upward departure arose. The hearing was stopped several minutes

later so an understanding could be had on the consequences of pleading guilty.

At the recess the government assured me no upward departures would be sought.

In continuing the hearing McGuire spoke his understanding to the court that the

misdemeanor would not have an impact at sentencing. The government then stated

twice on the record that he don't believe the misdemeanors would result in any



departure. When being coerced to plead, a reasonable jurist can plainly see

it was my understanding no upward departure would be sought based on the

misdemeanor regardless of the wording in the plea agreement. This was just

another deciept by the government because only weeks later he included the

misdemeanor in his offense conduct statement to the pre-sentence investigator.

What's even more troubling is I presented documentation to the federal court

that the conduct the gov't spoke of was dismissed in state court. The state

District court amended the charges and remanded to the state magistrate

for disposition, which were minor fines. (They are enclosed again along with the

plea agreement in the misdemeanor charges. Note the attorney states I will plead guilty

to the minor misdemeanor and all other charges will be dropped). These

misdemeanors should never have been brought to any federal judges attention.

But the government used them in presentations to the court at arraignment and

throughout the entire proceedings knowing I had never pled guilty, or had been

found guilty of any statutes or codes relating to anything remotely close to what

the government stated I had.



Because of the government promising no upward departures and

McGuire promising me + my family that I'd get 10 years and do 8½ and

that I'd lose at trial and probably get 20 years I was compelled to

proceed with the guilty plea. I provided proof of the promises in the transcripts

I provided McGuire's attorney work-product proving he calculated my sentence

at 10 years, maybe 11-14 with obstruction and that he never considered ANY

criminal history points.

    These proven FACTS, by evidence, shows my plea was anything but

knowing, intelligent or voluntary. Had appointed counsel researched and

brough these matters at the withdrawal hearing ... the standard then for

withdrawing a plea was merely a fair and just reason. Again I was

prejudiced, first by incompetence during the plea stages and then because my

standard for relief was increased for failure to develop the record at the

withdrawal hearing.



The day of the plea hearing McGuire (now retained by the government) went back home and deliberately stole over $5,000.00 from the settlement proceeds.

The motion to dismiss he let slide with no evidentiary hearing and when the court denied it he failed to withdraw the plea as instructed. The plea agreement stated I would not plead until the motion to dismiss was decided. Because of that I instructed McGuire to withdraw my plea if the motion was denied. Instead, McGuire filed a motion to the 8th circuit court appealing the District court's denial. He even made me pay the $105.00 filing fee. The motion was utterly frivolous as there had been no final decision in the case thereby denying the 8th circuit jurisdiction to hear the matter. (Another display of McGuire's ignorance and lack of knowledge in a federal proceeding).

Court appointed counsel failed to investigate any happenings prior to her appointment. She refused to withdraw the plea claiming I'd be denied the 3 point reduction. She should have known that because of the obstruction the 3 points would probably be denied anyways. She wouldn't

(22)

investigate the search warrant or witnesses or the ineffectiveness of counsel McGuire.

She relied solely on cross examination at sentencing, allowed a false criminal

history to be applied by failing to submit exhibits. She failed to investigate

the continuance sua sponte ordered by the court. Original sentencing was

set for Nov. ___, 2003. Counsel requested a copy of the change of plea hearing

transcript on November 4, 2003. She received the document Nov. 17, 2003. Counsel requested

a continuance of the sentencing because the 1 hour alotted was not enough time.

The District Court denied the motion. The sentencing memorandum was already

submitted by the government and by counsel for defense in a timely fashion before the

Nov. ___, hearing per court rules.

The District court, mere hours before the scheduled hearing,

sua sponte continued the sentencing hearing to December 22, 2003. The Court claims

she noticed that defense counsel had requested but had not yet received

the plea hearing transcript. (Hours before the hearing). But counsel "had" already

received the transcript some ___ days previously. I proved that nobody



counsel ordered the transcript and received the transcript well before the ~~era~~ sua sponte continuance from court records. I proved, by way of a letters from counsel, that nobody from the court called her to see if she had the transcripts in Counsel's letters states she believes the "court was mistaken" when she assumed the transcript had not been delivered. One week prior to the "continued sentence" the government notifies my counsel their intent to call 3 additional witnesses.

I contend, as I can not see any other reasonable explanation, that the District Court usurped authority by continuing the sentencing upon request of the government so that they could give the proper 7 day notice of the 3 witnesses he had just learned from the postal inspector would be in Iowa on vacation over christmas.

Counsel failed to also contest the witness list as being untimely and inappropriate. She failed to impeach the witnesses or alert the court of my Apprendi rights. She failed to ensure the government's original



people on the govt's witness list would appear, she failed to negate the restitution or the use of a statement as testimony regarding restitution where my rights of cross examination were violated.

Counsel again failed to notify the court of the prior criminal history being wrong as was reported by the government and allowing the govt. to present witness testimony for alleged conduct never convicted for because of no evidence and conflicting statements as well as statements from relatives exonerating innocent.

Counsel offered absolutely nothing in mitigation and supplied the court ahead of time with an allocution edited and typed by her paralegal and never signed or authorized by myself. She never objected to alleged exerpts from illegally seized mail by the government. I proved she never prepared for the hearing by showing the court that most all attorneys never ask a question they don't already know the answer to and some of her questions harmed my defense.

This counsel also failed to file an appeal with merit.



Instead of contesting the sentencing enhancements, the application and constitutionality

of the Guidelines, McGuire's ineffectiveness, the Fourth Amendment violations, or a number

of other causes ... counsel chose to appeal the interstate commerce nexus of the statute.

Counsel frivolously went against Eighth Circuit grain. Her efforts would have been better

served contesting the court's interpretation of "materials" as used in the statute and

throughout the 18 U.S. codes i.e. (All U.S. codes define materials as the content of what something

is made of).

　　　　I have provided documents to prove my claims of ineffective assistance of

counsel. It should also be noted that because counsel failed to raise the Apprendi

name at sentencing I was denied resentencing when remanded by the U.S. Supreme

court. The prejudice here is obvious. Because same counsel failed to raise

sentencing enhancements on appeal ... the Eighth Circuit denied my right to brief

Blakely when that ruling was handed down. As the Eighth Circuit decided my appeal

before the Booker opinion was issued the outcome of my appeal would have been

different had counsel been effective.



Wherefore, for all the reasons within this document ... I, Allan C. Mugan

pray for relief granting a COA and remand for an evidentiary hearing before a

different district court. At an evidentiary hearing I could provide dozens more

exhibits supporting my claims.

under penalty of perjury
this document is --

Dated: November 15, 2010          Respectfully Submitted,

 

Allan C. Mugan 08853-029
USP-Marion
P.O. Box 1000
Marion, IL 62959
unrepresented

 

I hereby certify that I have placed this document in the
hands of prison authorities on or before November 18, 2010.

Allan C. Mugan

Precedent referenced to Facts set forth in Brief

When the opinion/case law states, "the court _must_ determine," it means the Court is required to make findings of fact regarding the claim. See e.g., _United States v. Broiske,_ 2010 U.S. Dist. Lexis _____ 11/21/10. N.D. Iowa Linda Reade, judge — wherein the court states, "The court must determine which items the trooper obtained consent to search for in the van." This finding is necessary to determine..."

Rothgery v. Gillespi Cnty., Tx., 128 S.Ct. 2578 (1979)
@2581: This court has held that the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty. See Brewer v. Williams, 430 U.S. 387, 398-99, 97 S.Ct. 1232 (1977)

Hamilton v. Alabama, 7 L.ed 2d 114 (1961)
Whatever may be the function and importance of arraignment ... it is a critical stage in a criminal proceeding. What happens there may affect the whole trial. Available defenses may be irretrievably lost. (See also Coleman v. Alabama, 26 L.ed 2d 387 (1970))

United States v. Ferreau, 2007 U.S. Dist. Lexis 7828. D.N.D.
Inexperience may be a factor in evaluating an attorney's actual performance.

Harris v. Housewright, 697 F.2d 202. 12/28/82 (8thcir. 1982) Appeal from E.D.Ark.
Writ of Habeas Corpus was granted where prisoner showed that his defense was prejudiced by the ineffective representation of inexperienced counsel...
"the primary focus must be on how well counsel performed in the particular case..."
"criminal defendants should not be expected to pay the steep price of counsel's education by experience."

continued)

*page 2*

*Harris cont.*

The American Bar Association has emphasized the importance of assigning experienced counsel to criminal cases:   The practice of criminal law has become highly specialized in recent years, and only lawyers experienced in [federal] trial practice, with an interest in and knowledge of [federal] criminal law and procedure, can properly be expected to serve as assigned counsel. While it is imperative that assigned counsel possess advocacy skills so that prompt and wise reactions to the exigencies of a trial may be expected, this alone is not deemed sufficient. There must be familiarity with the [federal] practice and procedure of the [federal] criminal courts and knowledge in the art of [federal] criminal defense.

United States v. Easter, 539 F2d 663 (8th cir. 1976)

@665:  Defendant's second contention is that he was denied due process because he had ineffective assistance of counsel. The basic argument is that defendant's appointed counsel was a civil attorney without experience in criminal cases; that he failed to file a motion to suppress the search; and that he failed to object to the introduction of improper evidence at trial.

Counsel's failure to question the search and to object to the evidence was so derelict that the claim of Ineffective Assistance of Counsel must be sustained.

Martin v. Maxey, 98. F.3d 848, (5th cir. 1996)

Counsel failed to adequately argue a motion to suppress evidence that was obtained in violation of his Fourth Amendment rights or to raise that issue on appeal, and failed to obtain a preliminary hearing on the suppression issues.

page 3

State v. Reichenbach, 153 Wshd 126, 101 P.3d 80 (2004) ____ [Informative]
Holding that ... defendant received ineffective assistance of counsel where counsel failed
to move to suppress the evidence, the court reverses. The baggie of meth was the most
important evidence the state offered, yet counsel did not challenge its admissibility
despite serious questions about the validity of the warrant upon which the search was
based.


Wannatee V. Ault, 39 F.S2d 1164 (N.D. Iowa 1999)
Court concludes that failure to advise a criminal defendant of the relevant law
is "deficient performance" sufficient to satisfy the first prong of the "ineffective
assistance" analysis. See Hill v. Lockhart 474 U.S. 52; see same case Wannatee v.
Ault, 259 F.3d 700 (8th cir. 2001) [grant of writ affirmed]


United States v. Curcio, 680 F.2d 881 (2nd cir. 1982)
When a defendant (or counsel) raises a seemingly substantial complaint regarding
counsel's conflict of interest or divided loyalty, the Supreme Court has been
absolutely clear that the court MUST make a "thorough" inquiry into the factual
basis for the complaint. Holloway v. Arkansas, 435 U.S. 475 (1978). That
inquiry should be on the record and must be the kind to ease dissatisfaction,
distrust or concern. If the court fails to make a sufficient inquiry prejudice
is presumed and the S.D. of Iowa states the "reversal is automatic." See Atley v.
Ault, 21 F.S2d 949 (S.D. Iowa 1998).
Because the court failed to conduct a hearing and determine the impact of the
conflict of interest ... we will presume that the conflict prejudiced (defendant).

page 4

Henderson v. Sargent, 926 F.2d 706 (8th cir. 1991)

Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories, and development of evidence to support those theories. @ 712: Given this strong evidence showing counsel's complete failure to pursue a viable defense, we find trial counsel ineffective for failing to investigate the plausible defense theory in ___ Grant of writ affirmed.


Lawrence v. Armontrout, 900 F.2d 127 (8th cir. 1998)

Counsel has a duty to investigate all witnesses who allegedly (sic) possessed knowledge concerning (defendant's) guilt or innocence.


United States v. Curtis, 380 F.3d 1308 & 1311

Appellate Rules state a defendant's motion for leave to file a supplemental brief on appeal which asserted for first time that his sentencing enhancement was unconstitutional in wake of Supreme Court opinion — will be denied because defendant failed to raise issue in his initial brief.

At "detention hearing" hearsay and written testimony are admissible. See Gerstein, 420 U.S. at 121-22


Eldridge v. Atkins, 665 F.2d 228 (8th cir. 1981)

On appeal to the Eighth Circuit the court reversed and stated:

"[attorney] failed to adequately investigate and provide evidence relating to a substantial defense of misidentification." [Grant the writ of Habeas Corpus.]

page 5

Rios v. Rocha, 299 F.3d 796 (9th cir 2002)          [Informative]

@805   A defense attorneys failure to consider alternate defenses constitutes
deficient performance when the attorney "neither conduct[s] a reasonable investigating
nor ma[kes] a showing of strategic reasons for failing to do so." "Habeas Corpus
must be granted."


House v. Balkcom, 725 F.2d 608   (11th cir 1984)   [Informative]
Petitioner asserts there was no investigation, no interviewing of witnesses, no
preparation of a defense, no discovery, ... and no trial/preparation. Additionally,
House asserts that the attorneys made little use, if any, of evidence garnered ....
The district court, although recognizing certain deficiencies, found no prejudice.
Prejudice is not required where the ineffectiveness of counsel is "so pervasive
that a particularized inquiry into prejudice would be 'unguided speculation.'"
Washington v. Strickland, 693 F.2d at 1259, n.26. We so hold here. The haphazard
nature of [Attorney] Atkins' defense, the failure to develop strategy of any
consequence, and absenting themselves from crucial portions of the trial
constitutes no representation at all. Given the totality of the circumstances,
ineffectiveness of trial counsel has been amply shown. [Writ Granted.]


United States v. Matos, 905 F.2d 30 (2nd cir. 1990)   [Informative]
Counsel's apparent willingness to accept the government's version of the facts at least
calls into question the adequacy of his representation.
[We] think that Matos is entitled to an opportunity to show that his trial counsel
was ineffective and that absent such ineffective representation, there is a reasonable
probability that the result of the trial would have been different. Therefore, we
REMAND for an evidentiary hearing to develop a factual record on the issue of
IAC.

## page 6

Garman v. Lockhart. 938 F2d 120 (8thcir 1991)

Garman received erroneous parole advice, counsel's performance was not professionally reasonable. Minimal research would have alerted counsel to the correct parole eligibility date. [petition granted]


Moore v. Bryant, 348 F.3d 238 (7thcir.2003)          [Informative]

Moore alleged that the plea was not knowing and voluntary for a number of reasons, including the erroneous advice given to him by his attorney. He alleged that his attorney had informed him that the law in Illinois was changing and that good-time credits to which he currently would be entitled were being limited. As a result of that change in Illinois law, his attorney told him that, if convicted, he would serve 85% of the sentence imposed, whereas if he pled guilty immediately, he would serve, under current Illinois law, only 50% of a 20 year sentence. Therefore, based on the advice regarding the impending revision to the good-time credit statute, Moore was faced with the prospect a 10 year sentence if he pled guilty, or a 22-27 year sentence if he proceeded to trial and was convicted.   That advice was erroneous. The revision of the good-time statute was not retroactive, and the state does not present any argument that the advice was a correct interpretation of the law.

A reasonably competent counsel will attempt to learn all of the facts of a case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty. When the attorney fails to do so and that failure is the decisive factor in the decision to plead guilty, the Sixth Amendment is violated and the defendant may withdraw his plea.

Therefore ... the court's rejection of his ineffective assistance claim was contrary to, or an unreasonable application of, CLEARLY ESTABLISHED SUPREME COURT LAW. [Grant of writ affirmed.]

page 7

Daniels v. United States, 54 F.3d 290 (7th cir. 1995)    [Informative]

@ 294  A conflict may arise when a client's interests are adverse to his lawyer's pecuniary interests. Therefore, Daniels is entitled to an evidentiary hearing where he may attempt to substantiate his claim.

United States v. Taylor, 139 F.3d 924 (D.C. cir. 1998)    [Informative]

Taylor claimed that trial counsel had "financially coerced" him into pleading guilty because Taylor was unable to meet counsel's "unrelenting" fee demands. Specifically, Taylor alleged that ... counsel "asked for an additional $5,000 to proceed to trial, and expressed a clear lack of interest in fighting the case when Taylor advised him that he could not pay.

Taylor claimed, trial counsel pressured him into accepting the government's plea agreement in order to dispose of the case as quickly as possible.

Jones v. Lockhart, 851 F.2d 1115 (8th cir. 1988)

An erroneous stipulation is presumed prejudicial.

United States v. Gordon, 156 F.3d 316 (2nd cir. 1998)    [Informative]

By grossly under estimating Gordon's sentencing exposure in a letter to his client, Dedas Cattorey) breached his duty as a defense lawyer in a criminal case "to advise his client fully on whether a particular plea to a charge appears desirable."

Grant of new trial affirmed.

Clemmons v. Delo, 124 F.3d 944 (8th cir 1997)

We have no trouble concluding that the failure of Clemmons's lawyer to raise the confrontation clause claim on direct appeal was ineffective assistance of appellate counsel, and that it thus provides cause for Clemmons's failure to raise the claim on direct appeal.

page 8

United States v. Soto, 132 F.3d 56   (D.C. Cir. 1997)   [Informative]
@ 59   Familiarity with the structure and basic content of the Guidelines has " became
a necessity for counsel who seek to give effective representation."


United States v. Grammas, 376 F.3d 433   (5th Cir. 2004)   [Informative]
Additionally, one of the most precious applications of the Sixth Amendment may well be
in affording counsel to advise a defendant concerning whether he should enter a plea of guilty.
"When the defendant lacks a full understanding of the risks of going to trial, he is unable
to make an intelligent choice of whether to accept a plea or take his chances in court."
"By grossly underestimating [the defendant's] sentencing exposure ..., [counsel] breaches his
duty as a defense lawyer in a criminal case ..."
Remanded for hearing —


Nichols v. United States, 75 F.3d 1137   (7th Cir. 1996)   [Informative]
If Nichols can demonstrate that (1) there was inaccurate information before the
sentencing court and (2) the court relied on the inaccurate information, his sentence
was imposed in violation of due process.   Remanded for evidentiary hearing to determine
whether sentence data was accurate.


Miller-El, 537 U.S. at 338   "A claim can be debatable even though every jurist of
reason might agree, after the COA has been granted and the case has received full
consideration, that petitioner will not prevail.


Houston v. Lack, 101 L.Ed 2d 245   (1988)
"the notice of appeal was filed at the time petitioner delivered it to the
prison authorities for forwarding to the court clerk.

page 9

Fisher v. Gibson, 282 F.3d 1283  (10th cir 2002)    [Informative]

Where an attorney accidentally brings out testimony that is damaging because he has failed to prepare, his conduct cannot be called a strategic choice: an event produced by the happenstance of counsel's uninformed and reckless cross-examination cannot be called a "choice" at all.  See Strickland, 466 U.S. at 691

[Reversed and writ granted.]


Blakely v. Washington, 159 L.ed 2d 403  (2004) other than the fact of prior conviction - any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

Our precedents make clear, however, that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.

In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.       Reversed and Remanded for Resentencing.


U.S. v. Scott, 909 F.2d 488  (11th cir 1980)    [Informative]

@493   the trial judge impermissibly forced defendant to choose between two constitutional rights ...


Porcaro v. United States, 784 F.2d 38  (1st cir 1986)   [Informative]

Petitioner contends that he was denied effective assistance of counsel in that counsel tolerated, without comment, improper and prejudicial remarks and mannerisms on the part of the trial judge.      [Remanded for evidentiary hearing before a different judge.]

page 10

Morrow v. United States 722 F.2d 525 (1985)

Morrow alleged that his guilty plea and the confession that motivated it were involuntary because they were coerced by ... threats against his long-time female companion ... He further alleged that he told his court appointed counsel about the threats and that counsel advised him to plead guilty, and to tell the judge that his plea was voluntary.

Morrow alleged in sufficient detail that his plea was coerced by threats that [Brown] would be imprisoned if he did not plead guilty. This contention involved matters outside the record of this case, and if true could lead to setting aside the guilty plea. [Therefore, remand for an evidentiary hearing.]

Each abridge case note is a faithful quote from the judge's written opinion.

Note to the Clerk of Court:

Please address my sincerest apologies to the judges who will read the enclosed petition.

I am extremely sorry I must send such a sloppy brief. I mailed a request for extension of time to the court which went unanswered. My deadline to file this brief is at hand and I have no choice but to submit what I have prepared as a draft.

Respectfully,

Allen C. Mays

No copy of this document has been forwarded to counsel for the government. This is my ONLY copy! Please notify me of it's filing.

This document enclosed is subject to prison mailbox rules as to date considered filed with the clerk of court. I certify I have placed the enclosed petition in the hands of prison authorities on or before November 18, 2010.

Allen C. Mays

**RECEIVED**

NOV 1 9 2010

U.S. COURT OF APPEALS
EIGHTH CIRCUIT